Dear Mr. Speed:
This responds to your letters of December 11, 2000 and March 2, 2001, providing information pertaining to the Tangipahoa Parish Communications District No. 1 (hereinafter "District"), and attaching a copy of the relevant provisions of the Tangipahoa Parish Code of Ordinances pertaining to the creation of the district.
You advise that the District was created pursuant to La.R.S.33:9101, et seq., providing authority for Section 19 821 of the Tangipahoa Code of Ordinances creating the District.
You ask whether the district has the authority to purchase property and build an office building in its own name or whether the Tangipahoa Parish Council President Government, hereinafter "Council") must undertake this action.
We agree with the conclusions expressed in your letter of March 2, 2001, finding that the District was not authorized to purchase property and build an office building in its own name in that the district was not given specific authority by either La.R.S.33:9101 or by Section 19 821 of the Code of Ordinances by which it was created.
As you are aware, in order for a state department, agency, board or district to buy or sell immovable property, it must be specifically authorized to do so by the legislative act by which it is created. See Attorney General Opinion Nos. 95-342; 94-226; and 82-247. Inasmuch as La.R.S. 33:9101(3) clearly provides that the district "shall be a political and legal subdivision of the State, with power to sue and be sued in its corporate name and to incur debt and issue bonds", it is clearly a legal entity of the State and must have express authority to buy or sell immovable property.
This authority could be provided by the legislature or by the Tangipahoa Parish Council, but inasmuch as the District was created by the Council, as you have pointed out, it would be appropriate for the Council to acquire immovable property and build a building. Otherwise, it must confer special authority on the District to do so in its own name.
We hope this information is of assistance to you and if we may be of further help, please call upon us.
Very truly yours,
 RICHARD P. IEYOUB ATTORNEY GENERAL
 BY: ___________________________ GARY L. KEYSER Assistant Attorney General
RPI/GLK/tp
 OPINION NUMBER 00-23
January 31, 2000
84 Parishes 90-A Political Subdivisions — Officers, Agents Employees 90-A-1 Public Funds and Contracts R.S. 33:9101, 9103, 9106 R.S. 39:1301, et seq.
Communications district constitutes a political subdivision of the State and may adopt and implement its own budget.
Ms. Colleen Simmons Beauregard Parish Enchanced 911 Coordinator 410 Mayeaux Drive DeRidder, LA 70634
Dear Ms. Simmons:
You have requested an opinion of the Attorney General, in your capacity as coordinator of the Beauregard Parish Communication District (District), concerning the District's budget authority.
You state that the District was created in 1992. The Beauregard Parish (Parish) Police Jury (Police Jury) appointed the District's Board of Directors (Board) and, subsequent thereto, the voters of the Parish approved an Enhanced 911 Service (Service) pursuant to R.S. 33:9106.
The Board has controlled the operations of the District, with the exception of the District's budget, which has been implemented through the Parish. At its last meeting, the Board discussed the possibility of assuming control of its own budget. You specifically ask whether the District possesses the legal authority to administer its own budget.
In answer to your question, we refer you to R.S. 33:9101, et seq. Section 9101(A)(3) creates the District as a "political subdivision of the state, with power to sue and be sued in its corporate name and to incur debt and issue bonds . . ."
 Section 9103 further states, in pertinent part:
 § 9103. Board of commissioners; membership; qualifications and terms; powers; parish governing authority as district governing authority
 A.(1)(a) When any district is created wholly within a single parish, the parish governing authority creating it may appoint a board of commissioners composed of seven members to govern its affairs and shall fix the domicile of the board at any point within the parish.
 * * *
 B. The commission shall have complete and sole authority to appoint a chairman and any other officers it may deem necessary from among the membership of the commission.
 C. A majority of the commission membership shall constitute a quorum and all official action of the commission shall require a quorum.
 D. The commission shall have authority to employ such employees, experts, and consultants as it may deem necessary to assist the commission in the discharge of its responsibilities to the extent that funds are made available. (Emphasis added.)
Funding for the District is provided for in Section 9106 which provides, in pertinent part, the following:
 § 9106. Funding; definitions; emergency telephone service charge
 A. As used in this Section, the following words and terms shall have the following meanings, unless the context clearly indicates otherwise:
 * * *
 (7) "Fund the district" means pay the expenses necessary to carry out all purposes of the district, including but not limited to identification of all streets, roads, highways, and dwelling places in the district pursuant to R.S. 33:9102 and R.S. 33:9106(D).
 B.(1)(a) The governing authority of the district may, when so authorized by a vote of a majority of the persons voting within the district in accordance with law, levy an emergency telephone service charge in an amount not to exceed five percent of the tariff rate; however, if a district is serviced by more than one service supplier, then the emergency telephone service charge shall not exceed five percent of the highest tariff rate. The district governing authority may, upon its own initiative, call such a special election. Any such service charge shall have uniform application and shall be imposed throughout the entirety of the district to the greatest extent possible in conformity with availability of such service in any area of the district.
 * * *
 (2) If the proceeds generated by an emergency telephone service charge exceed the amount of monies necessary to fund the district, the district governing authority shall, by ordinance, reduce the service charge rate to an amount adequate to fund the district. In lieu of reducing the service charge rate, the district governing authority may suspend such service charge, if the revenues generated therefrom exceed the amount of monies necessary to fund the district. The district governing authority may, by ordinance, reestablish the original emergency telephone service charge rate or lift the suspension thereof, if the amount of monies generated is not adequate to fund the district.
 * * *
 C. In order to provide additional funding for the district, the governing authority may receive federal, state, parish or municipal funds, as well as funds from private sources, and may expend such funds for the purposes of this Chapter.
As can be gleaned from the above, the District constitutes a political subdivision of the State. It is authorized to employ personnel, including experts and consultants, necessary to discharge its duties. It may levy a voter-approved service charge and/or receive additional funds from federal, state, parish, municipal and private sources.
A review of the statutes establishing the District reveals no prohibition against the District's administering its own budget. To the contrary, it is empowered to do all things necessary to govern its affairs. This office has previously held that a communication district should (1) obtain general liability insurance — Opinion No. 93-262 and (2) publish the official minutes of its meetings and financial reports in an official journal — Opinion No. 93-262.
Based on the above, it is the opinion of this office that the District is authorized to adopt its own budget and administer the funding it receives in accordance therewith. In adopting and implementing its budget, the District must comply with the Louisiana Local Government Budget Act (Act) found at R.S.39:1301, et seq. Questions relating to the Act may be directed to the Office of the Legislative Auditor at (225)-339-3800.
In the event the District receives funding from the Parish, you may wish to make your budget document available to the Parish.
Trusting this adequately responds to your inquiries, I am
Very truly yours,
 RICHARD P. IEYOUB ATTORNEY GENERAL
 By: _________________________ ROBERT E. HARROUN, III Assistant Attorney General
RPI/Rob3/sfj
 OPINION NUMBER 82-247
April 7, 1982
90-B-1 Public Lands — Acquisition Transfer
La. R.S. 1410.1-1410.9
Louisiana Real Estate Comm. has no statutory authority to buy or sell immovable property.
The commission may not undertake the construction of a public building with self-generated funds without complying with the capital outlay law and the provisions of R.S. 39:1410.1 thru 1410.9, Article VII, Section 9
of the Louisiana Constitution of 1974.
Honorable Harry M. Hollins Executive Director Louisiana Real Estate Commission Post Office Box 14785 Baton Rouge, Louisiana 70808
Dear Mr. Hollins:
Your letter dated January 28, 1982 addressed to the Attorney General has been referred to this Division for attention and reply.
You advise that the Louisiana Real Estate Commission has determined that a permanent location for the Commission offices is in the best interests of the Commission, its employees and the general public and that the Commission desires to construct a permanent facility on land to be acquired by it with its self-generated revenues derived from licensing fees authorized by law.
You posed the following three questions regarding this subject, as follows:
 (1) Can the Louisiana Real Estate Commission expend its own funds to retain the services of an architect and/or purchase land in contemplation of construction of a building?
 (2) If the commission chooses to finance only the building structure through reimbursement bonds, issued by the State of Louisiana, a procedure requiring that the project be approved by the Louisiana House and Senate, can the commission expend its own funds to retain the services of an architect and/or purchase land pending approval by the legislature of the building proposal?
 (3) Should the legislature reject a proposal to construct a Real Estate Commission headquarters building through the mechanism of reimbursement bonds, can the commission expend its own funds to hire an architect, buy land, and construct a building?
In order to avoid any confusion, we will treat each question separately.
With respect to question (1) above, we find that there are in essence two parts to the inquiry. First of all, is the Louisiana Real Estate Commission statutorily authorized to retain architects or acquire land in contemplation of construction of a building?
Our research does not reveal any such statutory authority. Chapter 17 of Title 37 of the Louisiana Revised Statutes of 1950, entitled "Louisiana Real Estate License Law", consisting of Sections 1431-1464 authorizes the commission to regulate the issuance of real estate broker and real estate salesman licenses within the state and to adopt all necessary rules, regulations and by-laws necessary to administer and enforce the provisions of the chapter (see La. R.S. 1435 et seq). In order for a state department, agency, board or commission to buy or sell immovable property, it must be specifically authorized to do so by a legislative act and nowhere has the legislature conferred such authority upon the commission. Moreover, the Commission's use of self-generated funds for operating purposes is not expressly set forth in the law, but must be considered implicit in its authority as a non-appropriated fund entity.
Secondly, were the commission duly empowered to acquire immovable property, would it be exempt from the provisions of state law governing capital outlay projects under La. R.S. 39:1410.1 through 1410.9?
The cited law provides that any state department, agency, board, commission, college or university proposing or undertaking the construction of a public building and/or facility ancillary thereto with any state, federal or self-generated funds shall comply with the provisions of the capital outlay law.
As a state commission, the Louisiana Real Estate Commission is required to first submit to the State Facility Planning and Control Section of the Division of Administration a detailed report outlining the use to be made of the structure, the number of people to be housed therein, and all other information which the Facility Planning and Control Section may dee necessary to make an analysis of the request and determine t feasibility of the undertaking. This law essentially provides that the funds for the project shall be appropriated to the State Facility Planning and Control Section which shall become project administrator, making all inspections and payments.
While we pointed out in opinion number 78-67A that the commission could retain self-generated revenues, we also noted that the legislature could regulate the way in which affected agencies deposit their funds or expend them. As you have pointed out, the commission follows applicable law and policy of the Division of Administration regarding the purchase of goods, services, equipment, architectural services, etc. Clearly, the legislature has neither conferred the authority to acquire immovable property on the commission, nor has it conferred the authority to construct improvements. Moreover, the general law cited places construction projects of state entities under the jurisdiction of the Facility Planning and Control Section.
With respect to questions (2) and (3) above without further legislative authority, the commission would not be authorized to expend its funds to retain the services of an architect and/or purchase land. In our view, in order to confer this authority the legislature would have to amend the statutes which create the powers of the commission (La. R.S. 37:1435) and confer general authority to buy and sell land, construct improvements, etc, or, alternatively, pass a special statute authorizing the project which is contemplated and the numerous details pertinent to it.
If we may be of further help, please call upon us.
Very truly yours,
 Gary L. Keyser Assistant Attorney General
GLK/ss